### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

MELISSA S. ARQUETTE,

                **Plaintiff,**

-vs-                                     **Case No.  6:14-cv-206-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I.      BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, disability insurance benefits on June 15, 2011, alleging an onset of disability on January 7, 2011, due to depression, bipolar disorder, anxiety, and shaking. R. 142, 162. Her application was denied initially and upon reconsideration. R. 72-76, 79-84. Plaintiff requested a hearing, which was held on November 7, 2012, before Administrative Law Judge Kelley Fitzgerald (hereinafter referred to as "ALJ"). R. 25-50.  In a decision dated December 19, 2012, the

ALJ found Plaintiff not disabled as defined under the Act through the date of the decision. R. 8-24. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on December 4, 2013. R. 1-6. Plaintiff filed this action for judicial review on February 7, 2014. Doc. 1.

### B.  Medical History and Findings Summary

At the time of the hearing, Plaintiff was twenty-eight years of age, and had completed one semester of college. R. 29, 142. Ms. Arquette alleged an onset date of disability of January 7, 2011. R. 142. Plaintiff had earned her GED and had worked in the past as a fast food worker, delivery driver, fast food manager and waitress. R. 45-46, 163.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of depression, bipolar disorder, and shaking. R. 162. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from the severe impairments of affective disorders and anxiety related disorders, which were "severe" medically determinable impairments, but were no impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13. In terms of non-severe impairments, the ALJ found Plaintiff had a history of alcohol and marijuana abuse; she had been treated for substance abuse (cannabis abuse) in November 2003, but she testified that she last smoked it in 2008. R. 13.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full exertional range of work with restrictions to simple, routine, repetitive tasks and no more than occasional interaction with supervisors, coworkers and the public. R. 15-18. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 18. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids),

20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a cleaner, kitchen helper, maid, and addresser.  R. 19-20.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 20.

Plaintiff now asserts three points of error.  First, she argues that the ALJ erred in determining that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels with the nonexertional limitations of being limited to simple, routine tasks with no more than occasional contact with supervisors, co-workers and the public where the state agency physician indicated that the claimant would have a more restrictive residual functional capacity.  Second, she claims the ALJ erred by relying on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect Plaintiff's limitations.  Third, Plaintiff contends the ALJ erred in evaluating her credibility.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

# III.     ISSUES AND ANALYSIS

## A.     Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining that she had the residual functional capacity to perform the full range of work at all exertional levels with the nonexertional limitations of being limited to simple, routine tasks with no more than occasional contact with supervisors, co-workers and the public even though the state agency physician indicated that the claimant would have a more restrictive residual functional capacity.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ made the following residual functional capacity determination:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is restricted to no more than simple routine repetitive task with no more than occasional interaction with supervisors, co-workers and the general public.

-5-

R. 15.  The ALJ indicated that she considered and gave "some weight" to the opinions of the nonexamining state agency physicians, but "giving the claimant some benefit of the doubt," she "included additional limitations to the residual functional capacity." R. 18.

Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence because both of the state agency physicians indicated that Plaintiff would have more restrictive limitations than those found by the ALJ.  She argues that Dr. Holmes opined that Plaintiff could only perform a job with "minimal social demands and challenges." R. 56. A second state agency physician, Dr. Alvarez-Mulin indicated that Plaintiff could "understand and remember simple and also instructions of low complexity" and also would require "minimal social demands and challenges" at work. R. 66-67. Plaintiff argues that both state agency physicians opined that Plaintiff could only have "minimal" contact with other people, which is not the same thing as the ALJ's determination that Plaintiff could perform tasks with "no more than occasional interaction with supervisors, coworkers, and the general public." R. 15.  She also argues that the ALJ's determination of "moderate" difficulties in social functioning in the PRTF is not consistent with Plaintiff's RFC that she have "no more than occasional interaction with supervisors, coworkers, and the general public." R.14-15.

Plaintiff cites the Social Security Regulations concerning the evaluation of mental impairments, which states "When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence and pace) we will use the following five point scale: None, mild, moderate, marked and extreme." C.F.R. 20 § 404.1520a(c)(4); See *Tidwell v. Barnhart*, Case No. 5:04-cv-138-GMF (M.D. Ga. Feb. 25, 2005) (holding mental impairments would equate to a "percentage scale" and "none" would represent zero, mild would represent a limitation of between 1-25% of the time; moderate would represent a limitation of 26-50%

of the time; marked would represent a limitation of 51-75% of the time; and extreme would represent a limitation of 76-100% of the time).

Plaintiff argues that the medical evidence demonstrated that she would have more restrictive limitations in social functioning than that determined by the ALJ at Step 4, which only limited her to "no more than occasional interaction" with supervisors, co-workers and the general public. R. 15. She argues that both of the state agency physicians provided a more restrictive limitation than "occasional" by opining that Plaintiff could only perform a job with minimal social demands and challenges. R. 56, 67.

The Commissioner argues that the ALJ sufficiently accounted for the state agency psychologist opinions, in that Dr. Holmes found that Plaintiff had moderate limitations in social functioning and no limits in other areas. R. 54. Both state agency physicians opined that Plaintiff's mental impairments did not significantly interfere with her ability to function in a work setting requiring simple, repetitive tasks and that she should be considered for work settings with "minimal social demands and challenges." R. 56, 64, 67.

The Commissioner contends that Plaintiff's argument requires conflating the limitation to minimal social "demands" and "challenges" to minimal frequency of contact with other people, which is simply not accurate as it confuses a quantitative assessment of interactions (*i.e.*, the frequency of interactions) with a qualitative assessment (*i.e.*, ones that are not demanding or challenging). The Commissioner further argues that, even with the identified limitations on social functioning, both state agency physicians specifically opined that Plaintiff's "mental impairment does not significantly interfere with [her] ability to function in a work setting that requires [simple, routine tasks]," which certainly supports the ALJ's RFC and ultimate conclusion that Plaintiff is not disabled. R. 56, 67.

The Commissioner also argues, even if accepting Plaintiff's supposition that "minimal" referred to the quantity of interactions, the ALJ's RFC limiting Plaintiff to occasional interactions is not inconsistent with such a limitation as "occasionally" means "occurring from very little up to one-third of the time." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5 (S.S.A. 1983); SSR 96-6p, 1996 WL 374185, at *3 (S.S.A. 1996) (noting that "occasionally" requires no more than two hours in an eight hour day). Given that the definition of "occasionally" includes things that occur "very little," the Commissioner argues, it is broad enough to encompass even a restriction to minimal occurrences of interaction with others.

The Commissioner argues that Plaintiff's argument does not show that she cannot perform the jobs identified by the VE because the DOT does not indicate that the jobs identified by the VE and ALJ required any interaction with others beyond the level of interaction opined by the state agency physicians, even if their opinions were construed to mean "minimal" occurrences of interaction. Doc. 23 at 5 (citing U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT) § 381.687-014, 1991 WL 673257 (1991) (noting that the requirements of this job regarding people are "Not Significant"); DOT § 318.687-010, 1991 WL 672755 (same, not requiring talking either); DOT § 323.687-014, 1991 WL 672783 (same, not requiring talking or hearing either); DOT § 209.587-010, 1991 WL 671797 (same, not requiring talking or hearing either)).

The Court agrees that "occasional" social interaction of "very little to one-third of the time" as defined by the SSR, would encompass a restriction to minimal number of interactions. *See, e.g.*, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983) ("occasionally" means "occurring from very little up to one-third of the time"). Another district court recently rejected the same argument from a plaintiff who asserted that "occasionally" conflicted with a psychologist's limitation of "minimal" interaction:

> Nor does plaintiff establish reversible error in relation to social interaction. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir.2012). Indeed, the "final responsibility" for decisions such as the assessment of an individual's RFC is reserved to the Commissioner. SSR 96–5P. In this case, while Drs. Fisher and Reade found plaintiff should have "minimal social interaction", the ALJ found plaintiff should have no public contact and only occasional contact with supervisors and co-workers. (AR 13, 460.) The ALJ's reading of the opinions of Drs. Fisher and Reade can be deemed rational. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

*Hampton v. Colvin*, Case No. C13-0806-RSM. 2014 WL 201657 (W.D. Wash. Jan. 17, 2014). The ALJ's limitation in Plaintiff's RFC for social functioning to "occasional interaction with supervisors, co-workers, and the general public" based on the state agency physicians' opinions that she needed to be considered for work settings with "minimal social demands and challenges" was based on substantial evidence.

Plaintiff's other argument is that the ALJ failed to include all of Plaintiff mental limitations, including those stated on the Psychiatric Review Technique Form ("PRTF"), in the RFC. Plaintiff points to the portion of the PRTF which demonstrates that Plaintiff would have more restrictive limitations in social functioning than the level determined by the ALJ at Step 4, limiting her to "no more than occasional interaction with supervisors, co-workers and the general public." R. 15. Plaintiff acknowledges that the PRTF is "not an RFC assessment," and the ALJ uses it "to rate the severity of mental impairments at steps 2 and 3 of the sequential process," with the "mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PFT." SSR 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996). " However, she argues, as in *Winschel v. Commissioner*, 631 F.3d 1176

(2011), the court must consider the appropriate mental limitations which, in this case, are moderate limitations in social functioning.

In *Winschel*, the Eleventh Circuit reversed the ALJ's decision based on n inadequate hypothetical, holding that an ALJ's hypothetical question that restricted the VE's inquiry to simple, routine tasks or unskilled work did not adequately account for a plaintiff's moderate limitations in maintaining concentration, persistence and pace, unless the "medical evidence demonstrates that" the claimant can perform such tasks despite his limitations. *Id*. The Eleventh Circuit rejected the Commissioner's argument that requiring the ALJ to account for his step 2 findings at step 4 would improperly conflate two different inquiries. *Id.* at 1180. In the subsequent case of *Jarrett v. Commissioner of Social Security*, the Eleventh Circuit discussed *Winschel* and stated that a hypothetical question could sufficiently account for such an impairment by including a restriction to simple or routine tasks if the medical evidence demonstrated that the claimant had the ability to perform those tasks despite limitation in concentration, persistence or pace. 422 Fed. Appx. 869, 872 n. 1 (11th Cir. 2011) (unpublished).

The Commissioner argues that the ALJ's RFC and hypothetical question sufficiently accounted for the ALJ's findings of moderate impairments in social functioning on the PRTF section of the decision because the psychological opinion evidence from the state agency physicians reflects that, despite Plaintiff's moderate limitations in social interaction, she was still capable of work that involved simple, repetitive tasks and that she should be considered for a setting with "minimal social demands and challenges." R. 54, 56, 64, 67. Dr. Holmes and Dr. Alvarez-Mullin both opined that "because of social impairment, claimant should be considered for work setting that has minimal social demands and challenges." R. 56. Here, the ALJ included within the RFC and the hypothetical limitations based on the state agency psychologists opinions restricting Plaintiff to simple, routine,

-10-

repetitive tasks and "no more than occasional interaction with supervisors, coworkers and the public. R. 15. The ALJ's inclusion of the limitation of "no more than occasional interaction with supervisors, coworkers and the public" was based on substantial evidence.

### B.    Hypothetical to the VE

Plaintiff argues that the ALJ improperly relied on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect Plaintiff's limitations.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

After determining Plaintiff had the RFC to perform a full range of work at all exertional levels except she was restricted to no more than simple routine repetitive task with no more than occasional interaction with supervisors, co-workers and the general public (R. 15), the ALJ posed a hypothetical to the vocational expert noting these same limitations. R. 46-47. The VE answered that the person could perform the jobs of cleaner, commercial or institutional; kitchen helper; maid; and addresser. R. 47. Plaintiff argues that the ALJ's hypothetical failed to include the limitation of "minimal" social demands and challenges as indicated by both state agency physicians. R. 56, 67.

The Commissioner argues that, because the ALJ's RFC and hypothetical question to the VE sufficiently accounted for the limitations in the evidence, the ALJ properly relied on the VE's testimony. The Commissioner further argues that Plaintiff has failed to meet her burden of proving

that she cannot perform the jobs the VE identified, given that the jobs do not require more interaction with others than even Plaintiff's own proposed reading of the opinion evidence would require.

For the reasons explained above, the ALJ's limitation in Plaintiff's RFC for social functioning to "occasional interaction with supervisors, co-workers, and the general public" was based on substantial evidence.  Therefore, the ALJ's inclusion of the limitation in the hypothetical to the VE was based on substantial evidence.

**C.    Pain and credibility**

Plaintiff asserts that the ALJ erred in evaluating her credibility regarding her subjective complaints.  She contends that the record demonstrates that she suffered from documented impairments causing significant limitations.  The Commissioner argues that the ALJ properly discounted Plaintiff's credibility.

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the subjective complaints and limitations alleged, the ALJ must apply the Eleventh Circuit's three-part standard which requires: (1) evidence of an underlying physical or mental condition and either (2) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity,

persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment.  R. 16.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she properly applied the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 15-16.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  The ALJ complied with the Eleventh Circuit's standards in determining that Plaintiff had an objective medical mental health condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.  *See* R. 16.

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination.  In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> On April 21, 2010, the claimant presented to an outpatient clinic for a psychiatric evaluation. The claimant reported that she has not had medication or treatment for approximately four years. The claimant reported that she experiences depression, mood swings, anger, and irritability. The claimant reported a history of self-mutilation between the ages of 11 and 16. The claimant stated that she works part-time at [McDonald's]. She has two children-ages six years and five months. The claimant lives with her boyfriend and children. The claimant was diagnosed with Bipolar Disorder not otherwise specified. The claimant was assigned a global assessment of functioning (GAF) score of 50, indicting serious mental symptomatology (Exhibit 2F).

> Following medication adjustment, on September 14, 2010, the claimant repotted that she felt much better. The claimant reported less irritability and less mood issues (Exhibit 2F/18). On November 9, 2010, the claimant's mood was stable and her affect was within full range. The claimant had no suicidal or homicidal ideations. The claimant continued to maintain employment and reside with her significant other and children (Exhibit 2F/22).

In a follow-up appointment in March 2011, the claimant reported ongoing situational difficulties (Exhibit 2F/28). Two months later, the claimant's mood and presentation was stable. She reported that her relationship was stable (Exhibit 2F/3 l). On June 28, 2011, the claimant reported difficulty with depression, not wanting to leave her room. She reported conflict with her boyfriend (Exhibit 2F/34). In August 2011, the claimant's medications were adjusted; however, the addition of Celexa produced more manic and irritable symptoms. The claimant requested an adjustment to her medications. She also noted that she had relocated to Volusia County with her fiancé and two children (Exhibit 4F/1).

In February 2012, the claimant reported that she stopped taking Wellbutrin due to an increase in migraine headaches (Exhibit 7Fi2). The claimant reported, "I have been on the depressed side mostly over the past few days" (Exhibit 8F/6). In May 2012, the claimant reported that her "father-in-law" and his 12-year-old son moved in (Exhibit 8F/2). The July 10, 2012 treatment notes indicate that the claimant was still feeling depressed with sedation during the day. The claimant had a small child at home; however, her father-in-law moved out, so family life had improved (Exhibit 9F/2).

The record indicates that the claimant has experienced an increase in symptoms (anxiety, stress, mood swings, and depression) when she is off her medication (Exhibit 6F/2). The record also indicates that the claimant has depression off-and-on, and she has done best on Zoloft (Exhibit 9F/3).

Although the record confirms the existence of the claimant's impairment, the record does not support a resulting inability to work. The claimant's medical complaints have been treated conservatively, as she has received medication only. The claimant has not received the type of medical treatment one would expect for a totally disabled individual.

At the hearing, the claimant confirmed that no doctor has told her she is unable to work. What is more, the alleged onset date of disability is not corroborated by the medical evidence of record. The claimant testified that she was fired from her job on January 7, 2011; however, she also testified that she received unemployment compensation thereafter (see also Exhibit 8F/7).

The claimant collected unemployment compensation through the 4th quarter of 2011. When applying for unemployment compensation, an individual must assert that he or she is available and able to work. Therefore, the claimant presented herself as able to work, and there is a question as to whether the claimant's unemployment is actually due to a medical impairment or an inability to secure work. At the hearing, the claimant testified that she has looked for work "something I can do from home." The claimant indicated that she has looked for work that she could perform by herself.

The claimant has described daily activities which are not limited as one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to care for her two young children. She is able to maintain a relationship with her

boyfriend and his family. The claimant testified that her "mother-in-law" resided in the home from January 2010 through December 2011, and the claimant's "father-in-law" resided in the home from April 2012 through September 2012. The claimant reported that she is able to prepare simple meals, perform household chores, maintain a household with young children, shop for groceries, and attend doctor appointments.

* * *

Of note, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. The claimant admitted that no treating source advised her that she has been unable to work. Overall, when the record is considered in its entirety, though the claimant may experience depression and anxiety, she does not have the type of impairment that would prevent her from performing work activities with the additional restrictions as detailed above.

R. 17-18.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ offered several specific reasons for discrediting Plaintiff's subjective complaints, which included inconsistencies between Plaintiff's statements, her activities of daily living, conservative treatment with medication only, and collection of unemployment compensation through all of 2011.  These are factors the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.  Moreover, the ALJ's reasons are supported by substantial evidence as quoted at length above.

## IV.    CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's

decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter

judgment consistent with this opinion and, thereafter, to close the file.

    **DONE** and **ORDERED** in Orlando, Florida on February 3, 2014.

*David A. Baker*
_____

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record